UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                              )
MARIA JESUS GRANA, et al.     )
                              )
            Plaintiffs,       )
                              )
     v.                       )    Civil Action No. 18-2293 (ABJ)
                              )
DAVID ALAN RUNYON,            )
                              )
            Defendant.        )
_____)
```

# **MEMORANDUM OPINION**

Plaintiffs Maria Jesus Grana ("Grana") and her husband Fernando Gomez ("Gomez"), both citizens of Spain, brought this case against defendant David Alan Runyon. They allege that during their vacation in Washington, D.C., defendant negligently struck Grana with his car when she attempted to cross the street. Compl. [Dkt. # 1-1] ¶ 9.

On June 18, 2019, plaintiffs moved for partial summary judgment on liability. Pls.' Mot. for Partial Summ. J. [Dkt. # 10] ("Pls.' Mot."); Pls.' Mem. of Law in Support of Mot. for Partial Summ. J. [Dkt. # 10-1] ("Pls.' Mem. of Law"). On July 2, 2019, defendant opposed the motion and cross-moved for partial summary judgment on Claim II of plaintiffs' complaint. Def.'s Mem. in Opp. to Pls.' Mot. [Dkt. # 11] ("Def.'s Opp."); Def.'s Cross-Mot. for Partial Summ. J. [Dkt. # 12] ("Def.'s Cross-Mot.").

For the reasons stated below, the Court will grant plaintiffs' partial motion for summary judgment, and it will grant defendant's partial motion for summary judgment.

## BACKGROUND

Plaintiffs are residents of Spain and have lived there all their lives. Pls.' Statement of Undisputed Material Facts [Dkt. # 10-2] ("Pls.' SUMF") ¶¶ 1–2.[1] For their 25th wedding anniversary, they decided to join a twenty-one-day group tour to North America, in which they would visit New York City, Niagara Falls, Toronto, Washington, D.C., Los Angeles, Colorado, Las Vegas, and San Francisco. *Id.* ¶¶ 3, 5.

On July 22, 2015, after spending four days visiting New York City, Niagara Falls, Toronto, and the Amish country, the group arrived in Washington. *Id.* ¶ 6. The next day, plaintiffs took a tour of Arlington National Cemetery, the Lincoln Memorial, the Capitol, and the Air and Space Museum. *Id.* ¶ 7. The guided tour ended in the afternoon, and plaintiffs had the rest of the day free. *Id.* ¶ 8. They decided to head back to their hotel. *Id.*

---

1     Local Rule of Civil Procedure 7(h)(1) requires that the party submitting a motion for summary judgment attach a statement of material facts as to which that party contends there is no genuine issue, with specific citations to those portions of the record upon which the party relies. LCvR 7(h)(1). Plaintiffs have complied with this rule. The party opposing the motion must, in turn, submit a statement of genuine issues enumerating all material facts which the party contends are at issue and thus require litigation. *Id.* When the party opposing the motion fails to do this, the court may take all facts alleged by the movant as admitted. *Id.* As the District of Columbia Circuit has emphasized, "[Local Civil Rule 7(h)(1)] places the burden on the parties and their counsel, who are most familiar with the litigation and the record, to crystallize for the district court the material facts and relevant portions of the record." *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner,* 101 F.3d 145, 151 (D.C. Cir. 1996), citing *Twist v. Meese*, 854 F.2d 1421, 1425 (D.C. Cir. 1988). Here, defendant has failed to submit a statement of facts in dispute and has failed to oppose plaintiffs' statement of undisputed material facts. But, defendant's affidavits and memorandum of law identify material facts that he claims are genuinely in dispute. Thus, to the extent that defendant's memorandum of law and his supporting exhibits fail to contest plaintiffs' statement of facts, the Court will "assume that the facts identified by [plaintiffs] in [their] statement of material facts are admitted." LCvR 7(h)(1). However, the Court is not granting summary judgment against defendant on the grounds that any issue has been "conceded." *Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016). The Court is making its own assessment of the record.

Around 3:00 PM on July 23, 2015, plaintiffs crossed 16th Street, NW, at Scott Circle. *Id.* ¶ 11. They stopped at the intersection and saw that they had fourteen seconds left to cross, so they both entered the intersection. *Id.* When Grana entered the crosswalk, she heard the motor of a car. She maintains that the car hit her upper left leg, which caused her to spin around and land on the hood of the car with both hands. *Id.* ¶¶ 11–13.

Defendant was the driver of the car. He had just finished his work day at 2:30 PM and was headed to Anne Arundel Medical Center in Annapolis, Maryland, to visit his hospitalized mother. Pl.'s SUMF ¶ 17. He entered the right lane on 16th street, NW, and drove up to Scott Circle, where he intended to make a right turn on Massachusetts Avenue, NW. *Id.* ¶ 20. At the circle, he stopped at a red light and looked right but did not see anyone. Aff. of David Alan Runyon [Dkt. # 12-1] ¶ 3 ("Runyon Aff."); Deposition of David Alan Runyon [Dkt. # 10-8] ("Runyon Dep.") at 57:3–15. He then looked left, and while doing so, he lifted his foot off the brake. Runyon Dep. at 59:8–19, 60:18–20. When he turned his head right again, he saw pedestrians in front of his vehicle, and he immediately slammed his foot on the brake. *Id.* at 61:1–5.

Defendant testified that when Grana put her hands on the hood of his car, he immediately put the car in park and realized that he had "perhaps" hit one of them. Runyon Dep. at 61–62. He got out of his car, saying "I'm sorry, I'm sorry." *Id.* Grana started crying, and her husband took her from the street to the sidewalk so she could sit in the shade. Pls.' SUMF ¶ 31. Defendant called the police, Runyon Dep. at 67, and a police officer appeared on the scene within minutes. *Id.* The officer took statements from those present. Police Report [Dkt. # 10-5] at 5.

Grana was transported to George Washington University Hospital, where she was diagnosed with a ruptured Achilles tendon. Physician's Report [Dkt. # 10-7] at 2. She was given

3

crutches and the choice to have surgery in the United States or back home in Spain. Plaintiffs opted to go back to Spain, ending their twenty-one-day trip sixteen days early.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted).

The mere existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is "material" only if it is capable of affecting the outcome of the litigation. *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987). In assessing a party's motion, the court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the summary judgment motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations omitted), quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

# ANALYSIS

## I. The Court will grant plaintiffs' motion for partial summary judgment on liability.

As a general matter, "[i]n cases involving intersection collisions, 'the issues of negligence and proximate cause will almost always be questions of fact to be decided by the jury.'" *Mahnke v. Wash. Metro. Area Transit Auth.*, 821 F. Supp. 2d 125, 132–33 (D.D.C. 2011), quoting *Wash. Metro. Area Transit Auth. v. Jones*, 443 A.2d 45, 49–50 (D.C. 1982) (en banc). "[I]ssues of negligence . . . present factual questions for the trier of fact [u]nless the evidence is so clear and undisputed that fair-minded men can draw only one conclusion." *Lyons v. Barrazotto*, 667 A.2d 314, 322 (D.C. 1995) (alteration in original) (internal citations omitted); *Poyner v. Loftus*, 694 A.2d 69, 71 (D.C. 1997) ("Ordinarily, questions of negligence and contributory negligence must be decided by the trier of fact."); *Stehn v. Cody*, 962 F. Supp. 2d 175, 179 (D.D.C. 2013). "Only in the exceptional case is evidence so clear and unambiguous that [negligence and] contributory negligence should be found as a matter of law." *Lyons*, 667 A.2d at 322, quoting *Washington v. A. & H. Garcias Trash Hauling*, 584 A.2d 544, 547 (D.C. 1990); *see also Paraskevaides v. Four Seasons Washington*, 292 F.3d 886, 893 (D.C. Cir. 2002) ("Only in exceptional cases will questions of negligence [and] contributory negligence . . . pass from the realm of fact to one of law.").

Thus, to prevail on their motion for partial summary judgment as to liability, plaintiffs must establish that the undisputed evidence conclusively establishes that defendant was negligent or that he was negligent as a matter of law.

"The elements of a common law action for negligence are: (1) a duty of care owed by the [d]efendant to the [p]laintiff, (2) a breach of that duty by the [d]efendant, and (3) damage the [d]efendant proximately caused by the breach of duty." *Becker v. Lederer*, No. 15-CV-0044(AK)

2016 U.S. Dist. LEXIS 49499 at *12–*13 (D.D.C. Apr. 13, 2016), citing *Powell v. District of Columbia*, 634 A.2d 403, 406 (D.C. 1993) (citation omitted).

Courts in the District of Columbia have repeatedly held that "where a particular statutory or regulatory standard is enacted to protect persons in the plaintiff's position or to prevent the type of accident that occurred, and the plaintiff can establish [her] relationship to the statute, [an] unexplained violation of that standard renders the defendant negligent as a matter of law." *Childs v. Purll*, 882 A.2d 227, 235 (D.C. 2005) (internal citation and quotation marks omitted); *Joy v. Bell Helicopter Textron, Inc.*, 999 F.2d 549, 557 (D.C. Cir. 1993), quoting *Ceco Corp. v. Coleman,* 441 A.2d 940, 945 (D.C. 1982); *see also Stevens v. Hall*, 391 A.2d 792, 796 n.2 (D.C. 1978) ("Our Court of Appeals has consistently held in personal injury cases involving vehicles that if an applicable traffic regulation is violated negligence has been established as a matter of law, thus leaving only the question of proximate cause to be decided."); *Bauman v. Sragow*, 308 A.2d 243, 244 (D.C. 1973) (per curiam) ("Violation of traffic regulations may, of course, constitute negligence *per se*.").

Section 50-2201.28 of the D.C. Code sets forth a pedestrian's right-of-way at crosswalks:

> (a) The driver of a vehicle shall stop and remain stopped to allow a pedestrian to cross the roadway within any marked crosswalk, or unmarked crosswalk at an intersection, when the pedestrian is upon the lane, or within one lane approaching the lane, on which the vehicle is traveling or onto which it is turning.
>
>> (a-1) Whenever a vehicle is stopped at a marked crosswalk at an unsignalized intersection, a vehicle approaching the crosswalk in an adjacent lane or from behind the stopped vehicle shall stop and give the right-of-way to ensure the safety of pedestrians and bicyclists before passing the stopped vehicle.
>
> (b) A pedestrian who has begun crossing on the "WALK" signal shall be given the right-of-way by the driver of any vehicle to continue to the opposite sidewalk or safety island, whichever is nearest.

6

Plaintiffs claim that the defendant failed to adhere to this regulation, and that his violation or violations of the D.C. Code were a proximate cause of Grana's injuries, so they ask the Court to hold that he was negligent *per se*.

There is no dispute that the regulatory standard was intended to protect the plaintiff or to prevent the type of accident that occurred. Furthermore, both parties agree to the following facts: (1) The traffic signal was red during the incident, and the pedestrian signal indicated that plaintiffs were allowed to cross, Runyon Dep. at 51:3–6; 55:5–7; (2) plaintiffs were within the crosswalk when Grana was injured, *id*. at 64:12–16, 73:15–20; and (3) plaintiffs were not running or jogging. *Id.* at 59:20–60:1.

Furthermore, defendant testified that immediately before the incident, he approached the circle and his front tires were "probably over" the first painted line on the road indicating the boundary of the crosswalk. Runyon Dep. at 55:2–4. He stated that he looked to the right to determine whether he could make a legal right turn on red, and he saw no pedestrians. *Id.* at 55:15–22. Then, he looked left to see if there was oncoming traffic, and he lifted his foot off the brake. *Id*. at 57:11–15; 66:9–13. He admitted that when he lifted his foot off the brake, the car "went forward slightly." *Id*. at 60:18–20. When he looked to the right again, he saw plaintiffs in front of his car, and he immediately engaged the brake. *Id.* at 61:1–5. When he hit the brake, his car "jolted forward." *Id*. at 62:6–10. Clearly, defendant did not "remain stopped" as he should have, and his violation of D.C. regulations makes him negligent *per se*.

Defendant submits that there is a dispute of fact over whether he was the proximate cause of Grana's injury. Specifically, he contends that he did not cause Grana's injury because he did

7

not make physical contact with her.[2] He argues that her injury may have been caused by her own startled reaction to his car's moving into the intersection. Def.'s Cross-Mot. at 4; Runyon Dep. at 74:4–8.

But even if this were true, it would not preclude a finding of liability, because defendant's negligence would still be the proximate cause of Grana's injuries. "To establish proximate cause, the plaintiff must present evidence from which a reasonable juror could find that there was a direct and substantial causal relationship between the defendant's breach of the standard of care and the plaintiff's injuries and that the injuries were foreseeable." *District of Columbia v. Zukerberg*, 880 A.2d 276, 281 (D.C. 2005), quoting *District of Columbia v. Wilson*, 721 A.2d 591, 600 (D.C. 1998). The District of Columbia has "defined proximate causation as that cause which, in natural and continual sequence, unbroken by any efficient intervening cause, produces the injury without which the result would not have occurred." *Id.*, quoting *St. Paul Fire & Marine Ins. Co. v. James G. Davis Constr. Corp.*, 350 A.2d 751, 752 (D.C. 1976).

Here, defendant agrees that "the injuries were sustained through [the] incident." Runyon Dep. 83:22–84:4. And he testified: "I know my vehicle jolted forward, and I know it startled them . . . I – I don't know how hard it hit them, if it hit them. I know it startled them. I do know that." *Id.* at 62:6–10. Thus, there is no dispute that defendant's abrupt entry into the crosswalk caused plaintiff's injuries, even if he did not make contact with her. The question is, then, if Grana jumped in surprise at defendant's moving vehicle, whether that would be an intervening cause that breaks

---

[2] Defendant's arguments and testimony are at times conflicting. He also states that "it's probable" that his car bumped into her. Runyon Dep. at 77:19–78:3 ("Q. And but you do concede that in that brief instant that your car bumped Ms. Grana? A. It – it did lurch forward and it's probable that it could happen. Q. It's probable that it did hit her, is that – or bump her, right? A. It's probable, yes."), 81:11–15 ("Q. Do you think that the – the protrusions or the bumper guards on your Jeep may have likely struck Ms. Grana? Is that something you have an opinion on? A. It's probable.").

the chain of causation. If not, any dispute about whether the car made contact would not be material.[3]

"[U]nder [the] proximate cause analysis, an actor whose conduct is a substantial factor in bringing about harm shall be liable in negligence . . . for harm foreseeably attributable to his or her conduct." *Smith v. Hope Vill., Inc.*, 481 F. Supp. 2d 172, 200 (D.D.C. 2007), quoting *White v. United States*, 780 F.2d 97, 106 (D.C. Cir. 1986). Defendant's conduct was a substantial factor in bringing about the harm, and the harm was reasonably attributable to his conduct. It is reasonably foreseeable that a pedestrian who is lawfully walking within a crosswalk would be startled by a car moving into that crosswalk. Defendant does not contend otherwise. Thus, whether or not defendant made contact with Grana, he was still the proximate cause of her injuries.

Defendant also argues that there is a dispute of fact as to where and how plaintiffs entered the crosswalk. He asserts that because he did not see plaintiffs when he looked right, that plaintiffs likely did not enter the crosswalk from the pedestrian ramp. Defendant contends that plaintiffs entered it from an angle, cutting the curb from near the rear of the vehicle, and then proceeded to walk directly in front of defendant's vehicle. Def.'s Opp. at 3–4, citing Runyon Aff. ¶ 4. Because plaintiffs did not enter the crosswalk from the ramp, he argues that he did not see them and thus they "caus[ed] the accident" when they proceeded to walk directly in front of his car. Def.'s Cross-Mot. at 3–4.

As evidence for this theory, defendant submits an affidavit where he avers "on information and belief" that this occurred. Runyon Aff. ¶ 4. But, to be considered at summary judgment, "[a]n

---

3   It is unclear whether there is a dispute of fact over this issue at all. Plaintiffs contend that defendant struck Grana, but defendant asserts that he is not sure whether he made contact with her. Furthermore, defendant did not respond to plaintiffs' statement of facts with any evidence giving rise to a dispute. However, since the Court finds that defendant proximately caused Grana's injuries either way, it need not decide whether there is a dispute.

affidavit or declaration used to support or oppose a motion must be made on personal knowledge, [and] set out facts that would be admissible in evidence . . . ." Fed. R. Civ. P. 56(c)(4); *see Automatic Radio Mfg. Co. v. Hazeltine Research*, 339 U.S. 827, 831 (1950) (observing that where an averment in an affidavit was made "upon information and belief" but there was nothing available in the record to support it, the affidavit did not comply with Rule 56). The D.C. Circuit has found that the "requirement of personal knowledge by the affiant is unequivocal, and cannot be circumvented. An affidavit based merely on information and belief is unacceptable." *Londrigan v. FBI*, 670 F.2d 1164, 1174 (D.C. Cir. 1981). Thus, the Court cannot consider defendant's affidavit as evidence of plaintiffs' alleged contributory negligence.

Without defendant's affidavit, there is no evidence in the record to support the contention that plaintiffs entered the crosswalk at an angle. Defendant testified multiple times that he did not see when or where plaintiffs entered the crosswalk. Runyon Dep. at 57:22–58:5, 64:7–15, 65:4–5. And plaintiffs have submitted evidence that they exercised due care when they entered the crosswalk; Grana testified that prior to entering the intersection from the sidewalk, she saw that the car had stopped, and that the crosswalk signal indicated that they could cross. Deposition of Maria Jesus Grana [Dkt. # 10-4] ("Grana Dep.") at 52:2–9.

Furthermore, even if defendant's theory were to be credited, it would not save him from summary judgment because it is unclear how plaintiffs entering the crosswalk at an angle contributed to the accident. Plaintiffs were within the crosswalk when the accident occurred, and they were directly in front of defendant's vehicle. Defendant has admitted that he released his foot off the brake during a red light while stopped at a crosswalk, without looking in the direction that his vehicle was moving. Every person who drives on a public road in the District of Columbia is obliged to use ordinary care at all times to avoid striking other persons who may be using the

roadway and to avoid placing himself or others in danger. *Lyons*, 667 A.2d at 321. This duty includes the duty to keep a proper lookout to observe traffic and other conditions which may confront the driver. *District of Columbia v. Robinson*, 644 A.2d 1004, 1007 (D.C. 1994). "One who looks and does not see something that's plainly there to be seen, is as negligent as one who does not look at all." *Lyons*, 667 A.2d at 321. There is no dispute that defendant released his brake without looking where he was going, and so he breached his duty of care to plaintiffs.

Defendant points out that typically, "[a]utomobile collisions at street intersections nearly always present questions of fact. The credibility of witnesses must be passed on, conflicting testimony must be weighed, and inferences must be drawn. From this conflict and uncertainty, the trier of facts . . . must determine the ultimate facts of the case." Def.'s Cross-Mot at 4–5, quoting *Aqui v. Isaac*, 342 A.2d 370, 372 (D.C. 1975). The Court agrees that in most instances, claims of negligence present questions of fact and cannot be decided on summary judgment motions. However, this is one of those exceptional cases where there is no materially conflicting testimony or evidence, and thus there are no material facts in dispute. Therefore, the Court will grant plaintiff's motion for summary judgment as to liability.[4]

## II. The Court will grant defendant's motion for partial summary judgment as to Claim II of plaintiffs' complaint.

In defendant's cross-motion for summary judgment, he argues that Claim II of plaintiffs' complaint must be dismissed as a matter of law because it is a "stand-alone claim for 'Lost Wages'" for plaintiff Gomez, Grana's husband, and "no such claim exists under District of

---

4    Defendant also argues that plaintiff's motion for summary judgment is premature because discovery has not yet been completed. Def.'s Cross-Mot. at 5. But, as plaintiff points out and as was discussed as a status conference with the Court, the only discovery that is left pertains to damages, not liability. *See generally*, Jan. 31, 2020 Tr. of Proceedings [Dkt. # 19].

Columbia law." Def.'s Cross-Mot. at 6. In Claim II, Gomez seeks reimbursement for his lost wages for the time he spent taking care of his wife. Compl. ¶¶ 22–26.

Plaintiffs concede that "[m]ost courts have held that the injured spouse can recover for the reasonable value of home health care (not the 'treating spouse's lost wages,') . . . ," Pl.'s Opp. [Dkt. # 14] at 3, but they say that in the District of Columbia, the law on this issue is not completely resolved. They cite *Lester v. Dunn*, 475 F.2d 983, 986 (D.C. Cir. 1973), but in that case, the D.C. Circuit held that the mother of an injured minor child was entitled to recover compensation for taking care of him, including recovery of her lost wages. The lawsuit was brought by the parents on behalf of their son, and the Court stated: "Where a child is injured, the parent may recover 'the reasonable expenses of procuring medical treatment and care,' and where the parent provides that care him- or herself, '[t]he value of the parent's own services, as nurse or otherwise, is recoverable." *Lester*, 475 F.2d at 985–86 (internal citation omitted). Where a parent must quit her job to attend to the child, "rather than employ another to attend him, it would seem that the parent should recover the loss of wages."[5] *Id.* at 986.

The parental right to recover expenses when a child is injured "stems from the parents' legal obligation to support the child." *Lasley v. Georgetown Univ.*, 842 F. Supp. 593, 595 (D.D.C. 1994), citing *Lester*, 475 F.2d at 986. But here, no such obligation exists between spouses, and plaintiffs have not identified any case law supporting Gomez's claim for lost wages. Furthermore, in *Lasley*, the court rejected an independent cause of action for the parents' claim of lost wages for taking care of their independent adult son. *Id.* at 596. The court noted that any expenses incurred in caring for him could be recovered through an action in his own name. *Id.*

---

5 It is not clear whether the parents had brought standalone causes of action for their lost wages, or whether the Court was including lost wages as part of the damages recoverable for the negligence claim.

Similarly, here, any expenses occasioned by Grana's injury, including the value of care provided by Gomez, if properly established, can be recovered through Grana. Where healthcare services are rendered voluntarily, by a friend or family member, courts routinely award damages to the injured party equal to the value of those services. Courts differ in how those services are valued – the majority of courts have found that the appropriate measure is "the amount for which nursing care by others could have been obtained," *Richter v. N. Am. Van Lines, Inc.*, 110 F. Supp. 2d 406, 414 (D. Md. 2000), while other courts have found that the services can be measured by the amount of wages lost by the caregiver. *See W. Coal & Mining Co. v. Honaker*, 96 S.W. 361, 365 (Ark. 1906). This opinion does not address what the proper measure will be under D.C. law – it only reaches the question that Gomez himself may not be the plaintiff for a claim of lost wages.

Plaintiffs contend that they only brought Claim II in the alternative, and they argue that, "[e]ither Mr. Grana or Mr. Gomez, at an absolute minimum, are entitled to recover the reasonable value of nursing services and 'chauffeuring' services, rendered by Mr. Gomez to his injured wife." Pl.'s Opp. at 3. Defendant does not dispute that point, agreeing that "[t]he injured spouse may recover[ ] the fair value of care provided to her," and recognizing that even if Gomez's claim for lost wages fails, "certain relief may be afforded to Ms. Grana related to the care that Mr. Gomez provided." Def.'s Reply to Pl.'s Opp. [Dkt. # 15] at 2, 3. This will be an issue for another day, but hopefully, the parties will finally be able to work things out on their own.

## CONCLUSION

For all the foregoing reasons, the Court will grant plaintiffs' partial motion for summary judgment, and it will grant defendant's partial motion for summary judgment.

A separate order will issue.

_Amy B Jackson_
AMY BERMAN JACKSON
United States District Judge

DATE: March 30, 2020